IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIE BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1254 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Doc. 19) and Defendant's Cross-Motion for Summary Judgment (Doc. 11). The court has considered the motions, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED** and Plaintiff's motion be **DENIED**.

### I. Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability benefits under Title II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act").

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 9.

**A.   Factual History**

Plaintiff was born on March 12, 1971, and was thirty-nine years old at the alleged onset of his disability.[2]  Plaintiff protectively applied for disability benefits on March 11, 2011, claiming an inability to work due to ankle and wrist problems.[3]  In his application, he claimed that he became disabled on March 12, 2010.[4]

**B. Medical History**

On March 15, 2010, Plaintiff visited the Sadler Clinic following ankle and wrist injuries he sustained in a car accident on March 12, 2010.[5]  Plaintiff's foot was placed in a cast and Plaintiff was prescribed Vicodin.[6]

The following day, Plaintiff returned to the Sadler Clinic complaining of wrist pain.[7]  Howard Crockett, M.D., ("Dr. Crockett") diagnosed a wrist fracture with mild swelling.[8] Plaintiff was placed in an arm cast.[9]

On March 22, 29, and April 6, 2010, Plaintiff returned to the

---

[2]      See Doc. 8, Tr. of the Admin. Proceedings ("Tr.") 126.

[3]      See Tr. 122-34, 154.

[4]      See Tr. 126.

[5]      See Tr. 208.

[6]      See Tr. 209.

[7]      See Tr. 210.

[8]      See id.

[9]      See id.

Sadler Clinic.[10]   Progress notes indicated that Plaintiff's ankle was healing well.[11]

On April 20, 2010, Plaintiff visited the Sadler Clinic and was provided a splint for his ankle.[12]   On May 4, 2010, Plaintiff's splint was removed, and Plaintiff was fitted with a walking boot.[13]

On May 18, 25, and June 1, 2010, Plaintiff returned to the Sadler Clinic for follow-up exams.[14]   William Pack, M.D., ("Dr. Pack") noted that Plaintiff's ankle was healing and that Plaintiff did not report any complaints.[15]

On June 29, 2010, Plaintiff again visited the Sadler Clinic.[16] Dr. Pack observed that Plaintiff's fractures were well-healed, although he noted there was some swelling and Plaintiff reported pain in his ankle and hip.[17]

On July 27, 2012, Plaintiff returned to the Sadler Clinic complaining of pain in his knee, hip, and groin.[18]   Dr. Crockett opined that Plaintiff's pain was caused by an abnormal gait caused

---

[10]    See Tr. 211-13.

[11]    See Tr. 212-13.

[12]    See Tr. 214.

[13]    See Tr. 215.

[14]    See Tr. 216-18.

[15]    See Tr. 218.

[16]    See Tr. 219.

[17]    See id.

[18]    See Tr. 220.

by Plaintiff's use of a walker.[19]  Dr. Crockett noted that Plaintiff would begin physical therapy in two weeks and recommended focusing on Plaintiff's joint pain.[20]

On August 12, 2010, Plaintiff visited the Sadler Clinic.[21]  Dr. Pack fitted Plaintiff's ankle with a cast and noted that Plaintiff could return to work provided he did not have to stand for extended periods.[22]

## C.  Application

On March 11, 2011, Plaintiff filed a disability report by phone.[23]  On April 4, 2011, Plaintiff completed a work history report outlining his previous work experience.[24]  Plaintiff listed previous work as a sheet metal worker, extruder operator, and deer processor, reporting that he last worked on March 12, 2010.[25]

In a Function Report also completed on April 4, 2011, Plaintiff described his daily activities.[26]  Plaintiff indicated that his right foot swelled and ached if he stood for more than

---

[19]     See id.

[20]     See id.

[21]     See Tr. 224.

[22]     See id.

[23]     See Tr. 150-52.

[24]     See Tr. 160-65.

[25]     See id.

[26]     See Tr. 166-73..

4

five minutes at a time.[27]  His daily activities included watching television for nine hours a day and sitting outside.[28]  Plaintiff indicated that foot pain interfered with his sleep, waking him up in the night.[29]

He stated that he was able to prepare sandwiches twice a week and that his mother occasionally cooked for him.[30]  Plaintiff reported that he was able to iron his clothes, but that it took longer due to his injury.[31]  Plaintiff noted that he went outside every day.[32]  Plaintiff stated that his family visited him twice a week, but that he was not able to drive due to his foot.[33]

Regarding limitations, Plaintiff reported that he could walk for two-to-three minutes and carry fifteen pounds in his right hand.[34]  Plaintiff indicated that he used a cane to walk, although he did not have a prescription for it.[35]  He noted that he needed the cane to go up and down stairs.[36]

---

[27]   See Tr. 166.

[28]   See Tr. 167, 170.

[29]   See Tr. 167

[30]   See Tr. 168.

[31]   See id.

[32]   See Tr. 169.

[33]   See Tr. 170-71.

[34]   See Tr. 171.

[35]   See Tr. 172.

[36]   See id.

In an undated disability report prepared by Plaintiff, Plaintiff wrote that he could not afford to go to a doctor and that the over-the-counter medicine he took was not effective in preventing foot swelling.[37]

On May 17, 2011, Plaintiff visited Sonia Holmes, M.D., ("Dr. Holmes") in connection with his claim for disability.[38] Dr. Holmes observed slightly decreased range of motion and a four grip strength on a five-point scale, although he maintained full motor strength.[39] She noted that Plaintiff was unable to touch his thumb to his right ring or pinky finger.[40] Dr. Holmes observed that Plaintiff walked with a limp and had a mildly disrupted gait.[41] She noted that Plaintiff was unable to balance on his heels or toes.[42] Dr. Holmes listed Plaintiff's impairments as wrist pain, ankle and foot pain, and obesity.[43]

On May 24, 2011, Plaintiff was examined by Charles Harmon, M.D., ("Dr. Harmon").[44] Dr. Harmon found healed fractures in

---

[37]     See Tr. 187.

[38]     See Tr. 298-99.

[39]     See Tr. 299.

[40]     See id.

[41]     See id.

[42]     See id.

[43]     See id.

[44]     See Tr. 300.

Plaintiff's right ankle with screws in place and stable.[45]  Dr. Harmon found no fracture line, joint narrowing, or deformity, although he did note degenerative spurring and swelling.[46]

On June 14, 2011, Amita Hedge, M.D., ("Dr. Hedge") completed a Physical Residual Function Capacity ("RFC") Assessment.[47]  Dr. Hedge assessed Plaintiff of being able to occasionally lift twenty pounds, frequently lift ten pounds, push and pull without limit, stand for at least two hours in a normal eight-hour workday, and sit for at least six hours in a workday.[48]  Dr. Hedge assessed that Plaintiff could occasionally crawl and could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds.[49]  Dr. Hedge opined that Plaintiff's handling and fingering was limited in his right hand.[50]  Dr. Hedge concluded that Plaintiff's limitations were partially supported by the objective medical evidence of record.[51]

On September 17, 2011, Lana Minnigerode, M.D., ("Dr. Minnigerode") evaluated Plaintiff's RFC.[52]  Dr. Minnigerode noted that Plaintiff reported worsening pain, but that no recent

---

[45]     See id.

[46]     See id.

[47]     See Tr. 301-08.

[48]     See Tr. 302.

[49]     See Tr. 303.

[50]     See Tr. 304.

[51]     See Tr. 306.

[52]     See Tr. 309.

treatment records existed.[53]  Dr. Minnigerode opined that it was unlikely that Plaintiff's pain was worsening in a way that would justify a reduction in Plaintiff's RFC.[54]

Defendant denied Plaintiff's application at the initial and reconsideration levels.[55]  Plaintiff requested a hearing before an administrative law judge ("ALJ") of the Social Security Administration.[56]  The ALJ granted Plaintiff's request and conducted a hearing on July 13, 2012.[57]

**D.  <u>Hearing</u>**

Plaintiff and a vocational expert ("VE") testified at the hearing.[58]  Plaintiff was not represented by an attorney.[59]

Plaintiff testified that he lived in a trailer with his mother.[60]  Plaintiff explained that he had completed eleventh grade and was able to read and write, although he never earned a General Equivalency Degree.[61]  Plaintiff explained that he last worked cutting sheet metal in March 2010, and that he left that job

---

[53]     <u>See</u> <u>id.</u>

[54]     <u>See</u> <u>id.</u>

[55]     <u>See</u> Tr. 54-49, 68-69.

[56]     <u>See</u> Tr. 74-75.

[57]     <u>See</u> Tr. 26-46.

[58]     <u>See</u> <u>id.</u>

[59]     <u>See</u> Tr. 28-30.

[60]     <u>See</u> Tr. 32.

[61]     <u>See</u> <u>id.</u>

following the car accident.[62] Plaintiff reported that he had been unable to go back to work because of foot pain, swelling, and associated arthritis.[63] Plaintiff testified that he had previously been prescribed Vicodin, but after that prescription expired, he began taking over-the-counter Tylenol.[64]  He stated that he was unable to maintain his prescription because he could not afford trips to the emergency room.[65]  Plaintiff testified that his thumb experienced swelling that made it difficult to write or lift things with his right hand.[66]

Plaintiff admitted that he had been convicted of a drug-related crime in the 1990's, but testified that he had since turned his life around.[67]  Plaintiff stated that his daily activities included watching television.[68]  He stated that he used to play dominos and visit his grandchildren.[69]  He testified that he was able to fold clothes and wash dishes, but that he had to take breaks if he stood for too long.[70]  Plaintiff stated that he did not

---

[62]    See Tr. 32-33.

[63]    See Tr. 33.

[64]    See id.

[65]    See id.

[66]    See Tr. 37.

[67]    See Tr. 34.

[68]    See id.

[69]    See id.

[70]    See id.

vacuum, sweep, do yard work, or drive, and that his driver's license had recently expired.[71]

Plaintiff stated that he did not believe his ankle fractures had healed correctly and that he believed he may need reconstructive surgery.[72]

The VE testified that Plaintiff's work as a deer processor was heavy exertion, semi-skilled work, his work as a metal worker was medium exertion, semi-skilled work, and his work as a warehouse worker was medium-to-heavy exertion, unskilled work.[73]

The ALJ asked the VE whether a hypothetical individual who could sit six hours, stand and walk two hours with a sit-stand option, use a cane, only occasionally use his dominant hand, with no crawling or climbing could perform Plaintiff's past work.[74]  The VE testified that such a hypothetical individual could not perform Plaintiff's previous work, and that the combination of use of a cane when standing and limited use of the dominant hand would limit available jobs.[75]  The ALJ asked if a hypothetical individual with the above limitations but without the hand restriction could find work in the national and regional economies, and the VE testified

---

[71]     See Tr. 34-35.

[72]     See Tr. 38.

[73]     See Tr. 40-41.

[74]     See Tr. 42.

[75]     See id.

that the individual could find work as a packager, electronics worker, or assembler.[76]

The ALJ called for a supplemental hearing in order to send Plaintiff to a post-orthopedic exam for x-rays of his wrist and foot.[77] The ALJ requested that the examiner provide an updated RFC assessment and concluded the hearing.[78]

## D.  Post-Hearing Examination and Supplemental Hearing

On August 14, 2012, Plaintiff was examined by Frank Barnes, M.D., ("Dr. Barnes") at the ALJ's request.[79] Plaintiff reported that he was able to walk two blocks, sit for forty-five minutes, lift ten pounds, and stand for twenty minutes.[80] Dr. Barnes observed that Plaintiff's right hand had a grip strength of four on a five-point scale, no swelling or effusion, and some tenderness to touch.[81] Dr. Barnes noted that Plaintiff's right knee had full extension with no swelling or effusion.[82] Dr. Barnes observed that Plaintiff's ankle surgery site was well-healed, and that the ankle was stable to manipulation with slightly reduced range of motion.[83]

---

[76]     See Tr. 42-43.

[77]     See Tr. 45.

[78]     See Tr. 46.

[79]     See Tr. 310-21.

[80]     See Tr. 312.

[81]     See id.

[82]     See id.

[83]     See Tr. 313.

Dr. Barnes then evaluated Plaintiff's RFC.[84]  Dr. Barnes found that Plaintiff could sit for eight hours in an eight-hour workday and stand and walk for two hours, with a maximum of one hour standing at a time.[85]  Dr. Barnes indicated that Plaintiff did not need a cane to ambulate, although he did indicate that a cane was medically necessary.[86]  Dr. Barnes found that Plaintiff was not limited in reaching, handling, or fingering with either hand.[87]

Dr. Brooks indicated that Plaintiff could never climb ladders or scaffolds or balance, but that he could occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps.[88]  He opined that Plaintiff was limited to only occasionally operating a motor vehicle, and that he should never be exposed to unprotected heights or moving mechanical parts in a work setting.[89]

Plaintiff appeared at the supplemental hearing on October 17, 2012.[90]  Another VE was also present.[91]  The ALJ asked Plaintiff if he had anything new to report regarding his condition and Plaintiff

---

[84]    See Tr. 316-21.

[85]    See Tr. 317.

[86]    See id.

[87]    See Tr. 318.

[88]    See Tr. 319.

[89]    See Tr. 320.

[90]    See Tr. 49.

[91]    See id.

said that he did not.[92]

The ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, and work history would be able to perform Plaintiff's past work if they were limited to lifting ten pounds frequently, standing only two hours in an eight-hour workday, with no climbing or balancing and only occasional kneeling, crouching, crawling, or climbing stairs.[93]   The VE responded that such an individual would be unable to perform Plaintiff's past work.[94]   The ALJ then asked whether such an individual was capable of performing other work.[95]   The VE testified that the individual would be capable of working light exertion, unskilled work such as an office helper, storage facility rental clerk, or ticket seller.[96]   The VE opined that the hypothetical individual would be unable to find work if he additionally required four unscheduled breaks per day lasting fifteen minutes each.[97]

## E.  Commissioner's Decision

On October 30, 2012, the ALJ issued an unfavorable decision.[98]

---

[92]     See id.

[93]     See Tr. 51.

[94]     See id.

[95]     See id.

[96]     See Tr. 52.

[97]     See id.

[98]     See Tr. 10-25.

13

The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 12, 2010, and that Plaintiff had multiple severe impairments: degenerative joint disease of the ankle, fractures of the upper and lower limbs, and obesity.[99]   The ALJ found that Plaintiff's severe impairments, individually or collectively, did not meet or medically equal any of the listings of the regulations (the "Listings").[100]

The ALJ evaluated Plaintiff's injuries under Listing 1.02.[101] The ALJ found no medical source supported a conclusion that Plaintiff's impairments met or medically equaled the Listing.[102]

The ALJ found that Plaintiff was unable to perform past relevant work, but found that Plaintiff would be able to perform light-exertion, unskilled jobs with additional limitations, including never climbing ropes, ladders, or scaffolds, balancing, only occasionally climbing stairs, only occasionally stooping, kneeling, crouching, or crawling, and working without exposure to unprotected heights or moving machinery.[103]   The ALJ found that such jobs, including storage rental clerk, office helper, and ticket

---

[99]     See Tr. 15.

[100]     See Tr. 16.   The Listings are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1.   20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

[101]     See id.

[102]     See id.

[103]     See Tr. 16-19.

seller, were available in the regional and national economies.[104] The ALJ accordingly found that Plaintiff had not been under a disability from March 10, 2010, through the date of the ALJ's decision.[105]

Plaintiff appealed the ALJ's decision, and, on February 19, 2014, the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[106]  After receiving the Appeals Council's denial, Plaintiff timely sought judicial review of the decision by this court.[107]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: (1) the ALJ applied proper legal standards in evaluating the record; and (2) substantial evidence in the record supports the decision.  <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002).

## A.  <u>Legal Standard</u>

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act.  <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991).  Under

---

[104]    <u>See</u> Tr. 20.

[105]    <u>See</u> <u>id.</u>

[106]    <u>See</u> Tr. 1-3.

[107]    <u>See</u> Doc. 1, Pl.'s Compl.

15

the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); <u>see also</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3); <u>see also</u> 42 U.S.C. § 423(d)(5)(A) <u>Jones v.</u> <u>Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform her previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be considered to determine whether [s]he can do other work.

<u>Bowling v. Shalala</u>, 36 F.3d 431, 435 (5th Cir. 1994); <u>see also</u> 20 C.F.R. § 404.1520.  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled.

16

Greenspan, 38 F.3d at 236.

**B.   Substantial Evidence**

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).   It is "something more than a scintilla but less than a preponderance." Id.   The Commissioner has the responsibility of deciding any conflict in the evidence. Id.   If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.   42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.   Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).   In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).   In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless. Id.

A failure to controvert facts by competent summary judgment evidence may lead the court to accept them as undisputed. See Fed.

17

R. Civ. P. 56(e).  Summary judgment is not awarded by default because a motion is undisputed.  See Ford-Evans v. Smith, 206 F. App'x 332, 334 (5th Cir. 2006); Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n. 3 (5th Cir. 1995); John v. State of Louisiana (Board of Trs. for State Colls. and Univs.), 757 F.2d 698, 708 (5th Cir. 1985).  Summary judgment is appropriate only if the moving parties demonstrate the absence of a genuine issue of material fact and show that judgment is warranted as a matter of law.  See Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 164 (5th Cir. 2006); Hetzel, 50 F.3d at 362 n. 3.

### III. Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not resolve conflicting medical opinions and because the ALJ posed an improper hypothetical question to the VE.  Defendant asserts that the ALJ's decision should be affirmed because the ALJ properly determined that Plaintiff was never under a disability during the period in question based on substantial evidence.

Plaintiff argues the ALJ erred by failing to resolve the conflicting medical opinions of Dr. Barnes and Dr. Hedge.  Although Plaintiff claims Dr. Barnes' opinion additionally conflicts with the opinion of Drs. Holmes, Plaintiff relies on Dr. Hedge's finding that Plaintiff's RFC included manipulative limitations based on Plaintiff's May 17, 2011 doctor's visit with Dr. Holmes.  In

18

contrast, Dr. Barnes noted no manipulative limitations following his August 14, 2012 evaluation. Plaintiff is correct that the ALJ does not specifically address this apparent conflict regarding Plaintiff's RFC. While the ALJ need not specifically discuss all evidence in order to consider it, he cannot ignore evidence that does not support his decision. Jefferson v. Barnhart, 356 F. Supp. 2d 663, 675 (S.D. Tex. 2004). Although an ALJ considers medical opinions regarding a plaintiff's RFC, determining a plaintiff's RFC is a decision ultimately reserved to the ALJ. See 20 C.F.R. § 404.1527(d)(2); SSR 96-5p, 1996 WL 374183, at **2-3, 5 (July 1996).

Here, the ALJ chose to assign great weight to the opinion of Dr. Barnes. The ALJ did not specifically address Dr. Holmes' opinion in his ruling, although he did address his RFC opinion in a hypothetical question to the VE during the first hearing. However, at the conclusion of the first hearing, the ALJ requested a new physical evaluation and an accompanying physical RFC performed by Dr. Barnes. The ALJ assigned great weight to Dr. Barnes' more recent examination and opinion evidence. Because the ALJ has the final responsibility for determining RFC, and because he relied on substantial evidence to make his determination, the ALJ did not commit reversible error by failing to specifically address why he rejected Dr. Holmes' assessment as less credible.

Plaintiff also argues that the ALJ erred by relying on the VE's response to a hypothetical question that was defective because

it did not reflect all of Plaintiff's impairments, and because he did not rely on an earlier hypothetical that included impairments the ALJ ultimately found unsupported by the record.

The ALJ is not required to incorporate limitations that the ALJ did not find supported in the record.  See Bowling, 36 F.3d at 436; Morris v. Bowen, 865 F.2d 333, 336 (5th Cir. 1988).  Because the ALJ relied on Dr. Barnes' examination regarding RFC, the ALJ's hypothetical relied on substantial evidence and was not defective.

The court finds more than a scintilla of evidence in support of the ALJ's decision.  Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.  See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).  The court finds that the ALJ applied proper legal standards in evaluating the evidence and making his determination.  Accordingly, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED**.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's motion be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order

2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>4</u>th  day of September, 2015.

_____
U.S. MAGISTRATE JUDGE